COMMONWEALTH *vs.* GEORGE DOE.

Evidence that a tavern keeper had intoxicating liquors concealed in his outbuildings adjoining the tavern, and attempted to deceive a witness about the fact, is competent upon the issue whether he was using the tavern for the illegal sale and illegal keeping of intoxicating liquors.

Evidence that ale and an ale-pump were found in a tenement is competent upon the issue whether the keeper of the tenement was using it for the illegal sale of intoxicating liquor.

The provisions of the Sts. of 1870, *cc.* 389, 390, for prohibition of the sale of malt liquors in any town, by vote of its inhabitants, do not require that they shall take the vote by ballot, or shall previously determine by a formal vote the manner of taking it; and it is valid if taken by hand.

INDICTMENT on the Gen. Sts. *c.* 87, §§ 6, 7, for keeping and maintaining at Rockport on June 1, 1870, and divers other days and times between that day and the fourth Monday of January 1871, a tenement used by the defendant for the illegal sale and illegal keeping of intoxicating liquors.

In the superior court, before the jury were empanelled, *Scudder,* J., overruled a motion of the defendant to quash the indictment on the following grounds: " Because the law on which it was found is repealed; because there is no statute against the illegal keeping of intoxicating liquors; because the indictment does not except lager beer and other intoxicating liquors which

may be legally kept and sold; and because it does not allege that by vote of the town of Rockport the sale of certain intoxicating liquors was or is prohibited as provided by law."

At the trial, the Commonwealth specified the Sheridan House, a tavern in Rockport, as the tenement upon the keeping of which it relied in support of the indictment, and offered to prove by George W. Boynton, one of its witnesses, " that during the time charged the witness was taken by the defendant into his stable and wood-shed, to show him that he had no intoxicating liquors about the premises, and that the witness, while there, found intoxicating liquors concealed in various packages, both in the stable and the wood-shed." It appeared that the stable was twenty feet distant from the tavern, and the shed was situated between the tavern and the stable; and that " all were adjoining or nearly so, and all belonged to the defendant." The defendant objected to the evidence, on the ground that it did not tend to show that the tavern was used for the illegal sale or illegal keeping of intoxicating liquors, but the judge admitted it under instructions to the jury " that they should not consider it unless they were satisfied that the liquors so found belonged to the defendant and were kept by him for the purpose of sale in the tenement relied on."

The testimony of this witness was also admitted, under objection, that in July 1870 he found a barrel with ale in it and an ale-pump connected with it, in a room which he described as the bar-room of the tavern; and evidence was also admitted, under objection, that " ale in packages " was found in the same room in December 1870.

The Commonwealth offered to show, by the record of the town of Rockport, that at a meeting held on the first Tuesday of September 1870 the inhabitants voted that no person should be allowed to sell malt liquors there. The town clerk, on his examination as a witness in this connection, testified that the vote was taken " by hand," and that the town did not determine beforehand in what manner it should be taken. The defendant contended that the vote should have been taken by ballot, and that the mode of taking it should have been determined in the first instance, and therefore objected to the admission of the record of

the vote, but the judge overruled the objection. The jury found the defendant guilty, and he alleged exceptions.

*C. P. Thompson,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

MORTON. J. 1. The questions raised upon the defendant's motion to quash the indictment have been heretofore considered and decided by the court. *Commonwealth* v. *Bennett, ante,* 27, 30. *Commonwealth* v. *Kennedy, ante,* 292. *Commonwealth* v. *Grady, ante,* 412.

2. The testimony of the witness Boynton, that he found concealed liquors in the stable and shed of the defendant, adjoining the hotel, and that the defendant attempted to deceive him in regard to them, was competent. The jury might reasonably infer from these facts, if unexplained, that such concealed liquors were kept for the purpose of being sold in the hotel. If he kept them for this purpose, it is a circumstance tending to show that he used the house for the illegal sale of intoxicating liquor.

3. The testimony, that ale and an ale-pump were found in the house in July and December, was competent. If it be admitted, as claimed by the defendant, that the keeping of ale with intent to sell was not illegal after the St. of 1870, *c.* 389, went into effect, it does not help his case. It is clear that the sale of ale in Rockport was illegal both in July and in December. Sts. 1870, *cc.* 389, 390. The possession of ale and an ale-pump has some tendency to show that the premises were used for the illegal sale of ale, and was competent for that purpose. *Commonwealth* v. *Lamere,* 11 Gray, 319. It is to be presumed that proper instructions were given to the jury as to the application of this evidence. Being competent upon one of the issues under the indictment, the exception to its admission cannot be sustained.

4. There is no provision of the statute, requiring that the vote upon the question whether the sale of ale, porter, strong beer and lager beer should be allowed in the town, should be by ballot: nor is it necessary that the town should by formal vote previously determine the mode in which such vote should be taken. Sts. 1870, *cc.* 389, 390. The vote in Rockport, therefore, was valid, and made the sale of ale, porter, strong beer and lager beer in that town thereafter illegal.                    *Exceptions overruled.*